UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SYLVESTER W. REED,

Defendants.

REVISED REPORT AND RECOMMENDATION

21-CR-6057-DGL-MJP

---

**Pedersen M.J.** On August 5, 2021, a former counsel for the defendant filed an omnibus motion. (Omnibus Mot., ECF No 32.) On August 4, 2022, the parties argued the motion. (Minute Entry, ECF No. 59.) The parties asked the Court to review the post arrest statements of Defendant to determine if they should be suppressed. For the reasons stated below the Court recommends that the District Court suppress the incriminating statements prior to investigators reading Defendant his *Miranda*[1] rights, but not any statements made after Defendant waived his rights. Additionally, Defendant's motion to suppress physical evidence should also be denied.

Defendant moves to suppress statements that he made to law enforcement officers during an interview on the evening of December 16, 2020, arguing that "due to my physical and psychological condition during this interrogation, I was not able to understand my *Miranda* rights and did not knowingly and voluntarily waive them or agree to speak to the police." (Def's Aff., ECF No. 36 at 2, ¶ 6).

The government may not introduce a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

warned of his Fifth Amendment privilege against self-incrimination and voluntarily waived that right. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

To establish a valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Both parties state Defendant was in custody, so the issue centers around the voluntariness of any statements. Evaluating the voluntariness of the waiver and statements is made under "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *United States v. Anderson,* 929 F.2d 96, 99 (2d Cir. 1991).

"While the mental state of the defendant is part of that analysis, involuntariness generally cannot be found '[a]bsent police conduct causally related to the confession." *United States v. Hamilton*, 487 F. Supp. 3d 140 (E.D.N.Y. 2020), quoting *Colorado* v. *Connelly*, 479 U.S. 157, 164 (1986). Indeed, even where a suspect is in pain or intoxicated (as Defendant alleges here), but appears alert and lucid, courts have found *Miranda* waivers to be voluntary. *United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012) (finding statements voluntary because defendant "was lucid and able to engage the agents in coherent conversations despite the pain attendant to her injury"); *United States v. Khalil*, 214 F.3d 111, 121–22 (2d Cir. 2000)

(finding statements knowing and voluntary although suspect was in the hospital for surgery at time of questioning because he "was alert and mentally competent at the time of the questioning" despite being in pain); *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989) (finding statements made while being treated in the ICU for a "serious knife wound" voluntary where suspect "was alert and awake despite his pain" and officers honored his periodic requests to pause the interrogation); *Avincola v. Stinson*, 60 F. Supp. 2d 133, 160 (S.D.N.Y. 1999) (statements voluntary despite "physical manifestations of [defendant's] drug use," because he was alert and appeared to "appreciate the nature and consequences of his statements").

Defendant's affidavit states the following:

3. On December 16, 2020, I had been using cocaine and heroin consistently from the time I woke up until I was in a car accident and subsequently arrested at approximately 2:30 that afternoon.

4. As a result of the car accident, I was in physical pain, as well as mentally dazed and confused. I've been told that I also lost consciousness for a short time after the accident and before I was taken by ambulance to Strong Memorial Hospital for treatment.

5. After being released from the hospital approximately four hours later, I was taken directly to the Public Safety Building and placed in an interrogation room where I was interviewed by Investigators Andrew Wigton and Stuart Shuman.

6. At that time, I hadn't eaten or slept for days and had not taken my prescription medication. I was physically and mentally exhausted, physically ill, and recovering from a head injury. Due to my physical and psychological condition during this interrogation, I was not able to understand my *Miranda* rights and did not knowingly and voluntarily waive them or agree to speak to the police.

(Def's Aff., ECF No. 36.)

*The Recording*

The government provided the Court with an optical disc containing a video and audio recording in the interrogation room. Defendant originally was handcuffed to a chair that was attached to a round table with two other chairs also attached to the table. Eventually, an officer uncuffs Defendant and he remains uncuffed for the entire interview. Officers also provided Defendant was coffee, chips, and candy.

The talking begins at time marker 8:15 on the disc. (Custodial Interview, at 8:15, on file with Court.) The Defendant is seen in a blanket visibly shaking and bobbing with one of the investigators asking if he is okay. (*Id.*) At 8:29 the interview beings. Defendant tells the investigators that he has not slept or eaten in a very long time. (8:29.) Another investor asks Defendant if he is okay and says to Defendant that he looks upset. (8:32.) Defendant states something about taking cocaine and heroin beforehand. Defendant was unable to answer what day it was or the time. (8:34.)

Defendant outlined the car wreck he had a decade ago, which eventually led to his addiction to Oxycodone (later heroin and cocaine after he was cut off of Oxycodone), his family leaving him and the loss of his jobs. (8:32 to 8:42.) It is worth noting that Defendant loses composure, is upset, and is leaning over the interview table.

At 8:44 Defendant states that he has been on drugs all day (later it is disclosed that it is heroin and cocaine, some taken just hours before the interview). The investigators ask if he is drunk or high at the moment, to which he replied he was not. (8:45.) In fact, he then states that he is not on any of his proscribed medication,

and that he should be taking "quite of few medications." The investigators probe to see what kinds of medications he takes; he only revealed that some were for his heart and blood pressure but couldn't remember what the rest were for.

The investigators give him his *Miranda* warnings at 8:47. Defendant states that he understands and "doesn't mind" answering questions about his arrest. He discusses how he is in debt to several drug dealers, one of which has him do odd jobs such as returning products to home repair stores to get instore credit. The products were stolen by other individuals elsewhere. At 8:54 Defendant repeatedly states "I have a history." He then states that he robbed banks in the past. In the case of the bank robberies at hand, he said that it was done to pay off the dealer described before.

At 8:56 he begins discussing the first bank robbery. At 8:57 he states he does not remember going into the bank. He mentioned how he got high on heroin just prior to the bank robbery. After he dropped off the cash to the dealer, he was sent to do another bank robbery. After the second robbery, at time marker 9:02, he states that he got high a second time, this time using heroin and crack in a pipe. He said the police found him and Defendant did not know why he sped off because he was "so fucking high."

At this point Defendant becomes harder to understand. At time marker 9:13 he says something akin to how he believed the bank workers did not know who he was. He then identifies himself and the car he drove in various pictures shown to him by one of the police officers.

*Analysis*

Defendant was clearly being interrogated from the outset of the video. The investigators should have read Defendant his *Miranda* rights prior to starting the interview; the statements from time marker 8:15 to 8:47 are un-*Mirandized*. While Defendant does provide pedigree information, questions from the investigators elicit several facts directly related to the robberies in question. Therefore, the Court recommends that any incriminating statements prior to the *Miranda* warnings be suppressed.

While Defendant was unwell during the interview, the Court believes he understood the *Miranda* warnings and knowingly and intelligently waived them. Further, during the *Mirandized* portion of the interview, Defendant was able to recall specific details and articulate how and why he did what he did. While the Court understands that Defendant had taken drugs and crashed his car prior to the arrest and hospital visit, he was discharged from the hospital after spending hours there, and then was interviewed long after discharge. While he was certainly not feeling well and the officers frequently asked him if he was okay or not, Defendant was clearly lucid when read his *Miranda* rights and answering questions posed by the officers following his waiver. The Court therefore recommends that only the incriminating pre-*Miranda* warning statements be suppressed.

*Motion to Suppress Tangible Evidence*

Defendant also seeks to suppress tangible evidence seized during the search of the vehicle at the crime scene. Defendant has the burden to establish that he had a reasonable expectation of privacy in the property searched. *United States v. Haqq*,

278 F.3d 44, 47 (2d Cir. 2002) (The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has *an expectation of privacy in the place searched*") (internal quotation marks omitted) (emphasis in original). "[T]he burden of establishing standing falls squarely upon the defendant." *United States v. Hemingway*, No. 05-CR-6108L, 2007 WL 499470 at *9 (W.D.N.Y. Feb. 13, 2007) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)). "This burden 'is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.

Defendant's affidavit does not demonstrate that he had any interest in the searched white 2004 Buick. Absent such an affidavit, the defendant's motion to suppress tangible evidence seized from the vehicle should be denied. Additionally, during the interview, Defendant explicitly stated that the vehicle was not his. The Court therefore also recommends that the motion to suppress physical evidence be denied.

*Recommendation*

Accordingly, the Court hereby:

RECOMMENDS that only Defendant's incriminating pre-*Miranda* warning statements be suppressed, but that his post-*Miranda* warning statements not be suppressed. Further, Defendant's motion to suppress tangible evidence should be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec.* Co., 840 F.2d 985 (1st Cir. 1988).

F<u>**ailure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." <u>**Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**</u>

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED**.

Dated: September 16, 2022
Rochester, New York

_____
Mark W. Pedersen
United States Magistrate Judge