IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                   **NOTICE OF MOTION**

-v-                                                  21-cr-06057-DGL

SYLVESTER W. REED,

                          Defendant.
_____

      PLEASE TAKE NOTICE that upon the attached affirmation of Mark A. Foti, attorney for the defendant, that the defendant will move before the Hon. David G. Larimer, in the United States District Court for the Western District of New York, at 100 State Street Rochester, New York, as soon as possible for revocation of the Magistrate's Detention Order, filed at Docket Entry # 28, and for an Order releasing Mr. Reed on pretrial conditions pursuant to 18 U.S.C. §3142(a)(2) & (c).

Dated: November 28, 2022

                                                  Respectfully submitted by:

                                                  Mark A. Foti, Esq.
                                                  *Attorney for Sylvester W. Reed*

                                                  The Foti Law Firm, P.C.
                                                  16 West Main Street, Suite 100
                                                  Rochester, New York 14614
                                                  mark@fotilaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

-v-

SYLVESTER W. REED,
                      Defendant.
_____

**AFFIRMATION**
21-cr-06057-DGL

      Mark A. Foti, an attorney admitted to practice in New York State and in the United States District Court for the Western District of New York, affirms the following under the penalties of perjury:

      1.      I was appointed to represent the defendant, Sylvester W. Reed (hereafter "Mr. Reed" or "the defendant").

      2.      Mr. Reed was detained pursuant to a Detention Order issued following a hearing held on June 17, 2021. Dkt. # 27. Mr. Reed was represented by counsel from the Federal Defender's Office during those proceedings.

      3.      My representation commenced following a substitution of counsel on October 15, 2021. Dkt. # 42.

      4.      Although I did not represent Mr. Reed during the early stages of these proceedings, including the timeframe during which the Detention Hearing was litigated, I am fully familiar with the procedural history of this case through the review of the docket, the prior attorney's file, and communication with Mr. Reed, the Government, and prior counsel.

      5.      For the duration of my representation of Mr. Reed, he has remained incarcerated at the Monroe County Jail.

6. During this this time, I have witnessed Mr. Reed's medical struggles, including the deterioration of his mobility and health, and the denial of requests for treatment or medical accommodation at various points in time.

7. I have discussed these issues with Mr. Reed, and at times, I have communicated with the US Marshals Service relating to issues that he was/is having.

8. I have also reviewed various medical records and related documents pertaining to Mr. Reed's health, including medical documents produced within the last month.

9. I make this affirmation in furtherance of the relief requested in the attached Notice of Motion, specifically I am requesting revocation of the Magistrate's Detention Order, filed at Docket Entry # 28, and for an Order releasing Mr. Reed on pretrial conditions pursuant to 18 U.S.C. §3142(a)(2) & (c).

## Relevant Procedural History

10. Mr. Reed was arrested on December 16, 2020, on state charges of Robbery in the 3rd Degree and Grand Larceny in the 4th Degree.

11. At the time of arrest, there was evidence that Mr. Reed had engaged in heavy drug use, consistent with his history of struggles with substance abuse.

12. The following day, on December 21, 2020, a complaint was filed in the Western District of New York charging Mr. Reed with bank robbery in violation of 18 U.S.C. §2113(a).

13. Mr. Reed made an initial appearance before Magistrate Judge Mark W. Pedersen on December 23, 2020.

14. At his arraignment, the government moved to detain Mr. Reed, who was also subject to state custody at that time based on a petition alleging that he had violated the conditions of parole supervision. As a result of this detainer, the defense requested a Coonan Order and Mr.

Reed reserved his right to a detention hearing once the parole detainer had been lifted.

15. An indictment was filed against Mr. Reed on April 15, 2021. Dkt. # 20.

16. Mr. Reed was arraigned on this indictment before United States Magistrate Judge Mark W. Pedersen on April 26, 2021, and he entered a plea of not guilty. Dkt. # 24.

17. On April 28, 2021, Mr. Reed's state parole hold was resolved with a "six month hold," which has since concluded; is no longer being detained by New York State.

18. On June 17, 2021, Magistrate Judge Pedersen held a hearing on the government's motion to detain Mr. Reed pursuant to 18 U.S.C. § 3142(f)(1) on the grounds that no condition or combination of conditions could reasonably assure Mr. Reed's appearance in court and the safety of the community under 18 U.S.C. § 3142(e)(1). Dkt. # 27.

19. It was the government's burden to prove, by a preponderance of the evidence, that Mr. Reed posed a risk of flight and/or, by clear and convincing evidence, that no conditions of release would reasonably assure the safety of the community. The government also invoked the rebuttable presumptions under 18 U.S.C. §3142(e)(2) & (3) that no such conditions or combination of conditions existed.

20. At the conclusion of the detention hearing, the Court found that the government had met its burden on both grounds. *See* Order of Detention, Dkt. #28. The Court did not, however, indicate in its detention order that it was invoking either of the applicable presumptions. See *Id*.

21. Pursuant to Section §3145(b) of Title 18, United States Code, the defense respectfully seeks revocation of Magistrate Judge Pedersen's ruling announced from the bench on June 17, 2021 and the subsequent Order of Detention.

**Discussion**

22.     "Pretrial detention constitutes punishment in violation of the Fifth Amendments Due Process Clause when it is excessive to non-punitive purposes of detention, such as preventing danger to the community or ensuring a defendant's presence at trial." *United States v. Hill*, 462 F.App'x 125, 126 (2d Cir. 2012); *citing United States v. Salerno*, 481 U.S. 739, 746-47 (1987).

23.     To the extent that there was some possibility that Mr. Reed once presented a danger to the community or a risk of flight, his medical disposition mitigates against any finding that could be the case now, and given that this is a matter of pretrial release, the Court can impose a set of conditions that would assure that both considerations regarding detention can be decided in favor of release.

24.     *United States v. Salerno*, 481 U.S. 739, stands, inter alia, for the proposition that detention prior to trial or without trial is the carefully limited exception to liberty before trial. Indeed, that applies strongly with respect to a defendant's presumption of innocence. *Stack v. Boyle*, 342 US 1, 4 (1951) ("[a] single individual unnecessarily detained before trial is one individual too many and the increasing use of the practice places tremendous wear on our constitutional system"); *See also United States v. Gonzales Claudio*, 806 F2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention and the interests at stake); *also United States v. Paulino*, 335 F.Supp.3d 600, 609 (SDNY 2018).

25.     The Second Circuit has indicated that "[i]n age of staggering crime rates and an overburdened justice system, courts must continue to be cautious to avoid the appearance of dispensing assembly line justice." *United States v. Li*, 115 F3d 125, 133 (2d Cir. 1997).

26.     Consistent with that point, the Court previously found in *United States v. Chimurenga*, 760 F2d 400, 405 (2d Cir. 1995), that in order to detain an individual, such as Mr.

5

Reed, the Court may only draw upon evidence that provides "a high degree of certainty" as to a defendant's dangerousness.

27. In this case, Mr. Reed's medical issues mitigate against, and potentially nullify against any possibility that he currently presents a danger or risk of flight.

28. Mr. Reed has extensive medical issues that he has tried to manage while at the Monroe County Jail, including, for example: cervical spondylosis with myelopathy (spinal cord compression); hypertension (high blood pressure); hyperlipidemia (high cholesterol); paroxysmal atrial fibrillation; peripheral neuropathy; swelling of his feet and ankles; and prediabetes.

29. Further evidence of medical incapacitation can be seen from the time of Mr. Reed's arrest to the present.

30. Following the motor vehicle accident that occurred immediately before his arrest on December 16, 2020, Mr. Reed was transported by ambulance to Strong Memorial Hospital for evaluation and treatment. Medical records documenting his admission on December 16, 2020 indicate an "active problem list" including: hepatic cyst; renal cyst; rectal abscess; hyperplastic polyp of the large intestine; cervical spondylosis with myelopathy; right sided weakness; somnolence; rhabdomyolysis; dog bite of calf, right, sequela; pain of right lower extremity; and paroxysmal A-fib.

31. Mr. Reed was evaluated and treated with multiple x-rays, blood and urine analysis, and CT scans, after which he was advised that a scan of his abdomen and pelvis had detected a mass on his kidney indicative of "renal cell carcinoma." Doctors advised him that the mass needed to be surgically removed.

32. On May 26, 2021, Mr. Reed underwent a "partial nephrectomy" to surgically remove the mass on his kidney. He was discharged from Strong Memorial Hospital back to the

Monroe County Jail three days later with a list of 18 different medications and instructions to return for follow up care.

33. Mr. Reed has been consistently frustrated by the inadequate medical treatment he has received at the Monroe County Jail. He has often experienced complications as a result.

34. For example, during the course of his recovery from the May 2021 surgery, Mr. Reed developed an infection at the site of his surgery, requiring him to be transported to an outside provider for additional medical care on June 9, 2021.

35. Another example, which has presented substantial ongoing issues for Mr. Reed has been the persistent swelling in both of his lower legs and feet, which has become increasingly painful and has made it impossible for him to walk more than several feet at a time. The compression stockings provided by the jail did not provide any relief for this condition or his related discomfort, nor has he been provided with an appropriate diet to address his medical needs.

36. Mr. Reed experienced a brief reprieve from the painful swelling in his legs and feet when he was in the hospital for his kidney surgery, suggesting that this condition could be effectively addressed with appropriate medical treatment[1].

37. However, as Mr. Reed continues to remain incarcerated, the condition has instead deteriorated. He has to rely primarily on a wheelchair for purposes of all movement.

38. Earlier in his incarceration, with effort, Mr. Reed was able to stand for approximately four minutes at a time. That has declined to approximately two minutes or less.

---

[1] One example of appropriate treatment includes prescribed medication. Before Mr. Reed's arrest on December 16, 2020, his primary care physician had diagnosed him with peripheral neuropathy in his feet and had prescribed gabapentin. Mr. Reed had found this medication to be effective in minimizing the pain and swelling in his feet. Unfortunately, he has been advised by medical staff at the jail that this drug is either not available or for some other reason not being offered to him.

39. Throughout the duration of his incarceration, Mr. Reed has been denied various medical necessities, sometimes without any clear explanation of why.

40. For example, Mr. Reed was fitted for special shoes to address the worsening condition of his feet and legs. In an email from the Supervisory Deputy US Marshal on November 7, 2022, it was stated that "[Mr. Reed] was denied special shoes March 14th. That was denied by USMS HQ. We do not have any say in the matter. He can resubmit his request through medical and if medical can note that he is an unsentenced prisoner that may help. For some reason USMS HQ appeared to think Mr. Reed was sentenced and would be able to get them in BOP."

41. That email also acknowledged issues regarding outside medical trips, including a submission from June 24 that "was denied because USMS HQ requested more information and it was not provided by the facility."

42. What is clear is that while incarcerated, Mr. Reed's ability to receive treatment is impaired by the potential for communication failures and denial of authorizations by non-medical administrative personnel. If released, Mr. Reed would be able to focus on his treatment and his recovery without the inhibitions and limitations existing in jail.[2]

43. The ability to be autonomous over his treatment is particularly important at this point in time, because Mr. Reed is expected to have surgery scheduled on his back in the near future, and his ability to recover will be dependent on proper rehabilitation including specialized physical therapy. Expecting proper therapy to take place in jail is a recipe for disaster.

44. The Court has the ability to release Mr. Reed on stringent conditions, including home detention with gps-monitoring, where permission to travel is limited to medical appointments, including physical therapy, drug treatment, and court.

---

[2] Despite his struggles with drug addiction and periodic homelessness, Mr. Reed did regularly seek medical care from his primary care and other medical providers in the Rochester Community.

45. In the early stages of these proceedings, it was not clear whether Mr. Reed would have a residence to stay at if released. His mother, Orrie Reed, had been a reliable source of support, but she is also disabled and lives in a small home with her sister, so she was not able to offer her son a place to stay with her.

46. Now, Mr. Reed has been offered a residence with his daughter, Ebony Rowlands, on Canary Street in the City of Rochester. Having an identifiable residency, coupled with gps-monitoring assures Mr. Reed will not pose any risk of flight or any danger of the community. Indeed, Mr. Reed lacks mobility and cannot travel any significant distance without substantial assistance.

47. Mr. Reed would be supervised by a United States Probation Officer to ensure his compliance with all conditions that this Court deems necessary to reasonably assure Mr. Reed's appearance as required and the safety of any other person and the community. *See* 18 USC §§3142(a)(2) & (c)(1)(B).

48. There is a harsh reality that Mr. Reed's mobility may have substantially decreased due to his continued pretrial detention, but his current disposition removes any question over whether he could present a risk of flight or danger to the community. At this point, Mr. Reed should be released for the remainder of this case, and he should be able to address better his medical needs while the case is pending.

WHEREFORE, it is respectfully requested that this Court revoke the Order of Detention previously issued by the Magistrate Judge and Order Mr. Reed's release pursuant to 18 U.S.C. §3142(a)(2).


Dated: November 29, 2022

                                        Respectfully submitted,

                                        s/Mark A. Foti
                                        Mark A. Foti, Esq.